OPINION
{¶ 1} Appellant, Susan Mineer, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting temporary legal custody of F.R., an infant, to Jewish Family Service dba Adoption Connection, a private child placing agency ("Adoption Connection").[1]
Appellant is the child's guardian ad litem. We reverse and remand the juvenile court's decision.
 {¶ 2} On March 19, 2008, four days after the child's birth, Clermont County Department of Job and Family Services ("CCDJFS") filed a complaint alleging that the child was dependent under R.C. 2151.04(C) and seeking permanent custody of the child, or in the alternative, temporary custody. That same day, the juvenile court granted interim temporary custody of the child to CCDJFS, appointed appellant as the child's guardian ad litem, and set the matter for a hearing on April 1, 2008.
 {¶ 3} On April 1, the juvenile court started the hearing with the understanding that the child's parents "[were] both in agreement that their child can be adjudicated dependent and that temporary legal custody would be granted by the Court to * * * Adoption Connection." After briefly conversing with the child's parents to make sure they did not want separate adjudication and disposition hearings, the juvenile court stated: "Then based on your agreement, I will adjudicate your child dependent, I will grant temporary legal custody to * * * Adoption Connection, and I'll accept your admission that the child is dependent because everybody understands all their rights? No one has any questions about their rights or what they're agreeing to, am I right[?]" Appellant, the child's guardian ad litem, was not present at the hearing. The child's mother was represented by an attorney; the child's father declined being represented by an attorney. Later that day, the child's parents separately executed *Page 3 
permanent surrender agreements granting permanent custody of their child to Adoption Connection.
 {¶ 4} Concerned that the child's best interests were not met by his placement, appellant filed objections to and a motion to review the juvenile court's decision. Both pleadings referred to the fact that the juvenile court proceeded with the April 1 hearing despite appellant's absence. Adoption Connection moved to dismiss appellant's motion and objections. On June 3, 2008, the juvenile court held a hearing on the objections. The hearing focused solely on what happened procedurally during the April 1 hearing, and did not involve any evidence or discussion as to what was in the best interest of the child. Appellant challenged the fact that an adjudication and a disposition were made without the presence of a guardian ad litem. In turn, attorneys for CCDJFS, Adoption Connection, the child's parents, the family seeking to adopt the child, and a family who already has custody of some of the child's siblings responded to appellant's argument.
 {¶ 5} On June 18, 2008, the juvenile court summarily overruled appellant's objections and affirmed the April 1 decision in its entirety. This appeal follows in which appellant raises the following two assignments of error.[2]
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE [JUVENILE] COURT ERRED WHEN IT PROCEEDED WITH ADJUDICATION AND DISPOSITION ON A COMPLAINT REQUESTING PERMANENT COMMITMENT WITHOUT A GUARDIAN AD LITEM." *Page 4 
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE [JUVENILE] COURT'S FINDING OF DEPENDENCY AND GRANTING TEMPORARY COMMITMENT WITHOUT THE PRESENTATION OF EVIDENCE IN THE ABSENCE OF AGREEMENT OR PRESENCE OF THE GAL WAS AN ABUSE OF DISCRETION."
 {¶ 10} In her first assignment of error, appellant challenges the juvenile court's "proceeding with adjudication and disposition in the absence of a GAL in what was a very abbreviated procedure." In her second assignment of error, appellant challenges the fact that the juvenile court "accepted [the parents'] agreement that wasn't an agreement because the GAL did not agree, proceeded to make a finding without taking evidence and then proceeded to a disposition that wasn't based on a finding that this was in the best interest of the child."
 {¶ 11} We reverse the juvenile court's decision adjudicating the child as dependent and granting temporary legal custody to Adoption Connection for the following reasons.
 {¶ 12} At the outset, we note that in the record before us, there is no entry from the juvenile court appointing appellant as the child's guardian ad litem. However, all parties agree that appellant was so appointed on March 19, 2008. There is no evidence in the record as to when appellant was notified that she was the child's guardian ad litem. In her appellate brief, appellant states that on March 20, 2008, she wrote the following letter to the juvenile court: "This is to inform you that I will be out of town March 31, 2008 through April 4, 2008, and will therefore be unavailable as Guardian Ad Litem during that week." Appellant asserts that when she sent the letter, she was not aware she had been appointed as the child's guardian ad litem. As written, the letter does not notify the juvenile court that appellant was unavailable that week as the child's guardian ad litem; rather, it notifies the court that appellant was unavailable that week as a guardian ad litem. The letter is attached to appellant's brief but is *Page 5 
not in the record.
 {¶ 13} We also note that there is no evidence in the record before us as to whether or when appellant was notified of the April 1, 2008 hearing. Further, there is no evidence as to whether the juvenile court complied with R.C. 2151.35(B)(1) before it held the combined adjudicatory and disposition hearing. R.C. 2151.35(B)(1) provides that if a juvenile court "at an adjudicatory hearing determines that a child is [a] dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated * * * dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing."
 {¶ 14} A guardian ad litem is "a person appointed to protect the interests of a party in a juvenile court proceeding." Juv. R. 2(O). InIn re C.T., 119 Ohio St.3d 494, 2008-Ohio-4570, addressing whether a guardian ad litem has statutory authority to file a motion for permanent custody, the Ohio Supreme Court described the role of a child's guardian ad litem as follows:
 {¶ 15} "In a child abuse, neglect, or dependency case, the court must appoint a guardian ad litem to protect the interests of the child. The guardian ad litem is required to `perform whatever functions are necessary to protect the best interests of the child * * * and shall file any motions and other court papers that are in the best interests of the child.'
 {¶ 16} "* * *
 {¶ 17} "[W]e are directed by R.C. 2151.01 to liberally construe the sections in R.C. Chapter 2151 toward the following purposes: `To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment * * * [and] [t]o provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in *Page 6 
which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.'
 {¶ 18} "* * *
 {¶ 19} "The role of the guardian ad litem * * * is to protect the interests of the child. The guardian ad litem must `faithfully' discharge that duty. A guardian ad litem is given wide latitude to carry out his or her responsibilities on behalf of the child and may file any motion necessary to protect the best interests of the child." In reC.T., 2008-Ohio-4570, ¶ 6, 12, and 14, citing R.C. 2151.281(A), (B)(1), (D), and (I).
 {¶ 20} As the supreme court's decision clearly indicates, and as the statutory scheme in R.C. Chapter 2151 also indicates, the best interests of a child in a child's abuse, neglect, or dependency case are paramount and must be protected throughout the proceedings. The protection of a child's best interests in R.C. Chapter 2151 proceedings is the role of a guardian ad litem when one is appointed. In the case at bar, although it had appointed a guardian ad litem for the child, the juvenile court nevertheless proceeded to hold the April 1 hearing, adjudicate the child dependent, and grant temporary legal custody to Adoption Connection without the presence of a guardian ad litem. As a result, the child was never represented throughout the proceedings in the juvenile court. Nor were his best interests protected. By contrast, the child's mother was represented by an attorney, and had he not declined, the child's father would also have been represented by an attorney.
 {¶ 21} The statutory scheme throughout R.C. Chapter 2151 is the best interests of the child, not the best interest of the child's parents, of a public children services agency, or of a private child placing agency. In light of In re C.T., we find that the juvenile court erred by proceeding with the adjudication and disposition of the child without a guardian ad litem. By so proceeding, the juvenile court failed to ensure that the child's best interests were *Page 7 
represented and protected, a paramount goal under R.C. Chapter 2151.
 {¶ 22} We are mindful that after the juvenile court granted temporary legal custody of the child to Adoption Connection, the child's parents subsequently executed permanent surrender agreements which granted permanent custody of the child to Adoption Connection. However, based on the Ohio Supreme Court's decision in Adoption Link, Inc. v. Suver,112 Ohio St.3d 166, 2006-Ohio-6528, we believe the child's parents lacked authority to permanently surrender their rights to their child to Adoption Connection.
 {¶ 23} In Suver, shortly after his birth, a child was placed in the temporary-shelter care of the county department of job and family services. The juvenile court subsequently found that the child was dependent and granted temporary custody of the child to the department. The child's parents subsequently executed agreements permanently surrendering custody of their child to a private child placing agency. The private agency filed a petition for a writ of habeas corpus to compel the department to transfer physical custody of the child to the private agency. As one of the grounds denying the petition, the supreme court stated:
 {¶ 24} "R.C. 5103.15(B)(2) does not permit parents of a child less than six months old who do not have legal custody of the child to enter into an agreement with a private child-placing agency surrendering the child to the permanent custody of that agency. To be sure, R.C. 5103.15(B)(2) provides, `The parents of a child less than six months of age may enter into an agreement with a private child placing agency surrendering the child into the permanent custody of the agency without juvenile court approval if the agreement is executed solely for the purpose of obtaining the adoption of the child.' But that provision must be read in context and be construed in pari materia with the other provisions of R.C. 5103.15, which manifestly condition any such permanent-surrender agreement on the parents or other specified persons having custody of the child. See, e.g., R.C. 5103.15(A)(1) (The parents, *Page 8 
guardian, or other persons having the custody of a child may enter into an agreement with any public children services agency or private child placing agency * * * `[emphasis added]); R.C. 5103.15(B)(1) (`Subject to, except as provided in division [B][2] of this section, juvenile court approval, the parents, guardian, or other persons having custodyof a child may enter into an agreement with a public children services agency or private child placing agency surrendering the child into the permanent custody of the agency' [emphasis added]). When the parents attempted to permanently surrender their rights to T.J. to Adoption Link, they lacked authority to do so because the department had legal custody of the child." Suver, 112 Ohio St.3d at ¶ 9.
 {¶ 25} In the case at bar, when the child's parents executed their permanent surrender agreements, Adoption Connection, not the parents, had (temporary) legal custody of the child. In light of Suver, we find that when the child's parents attempted to permanently surrender their rights to their child to Adoption Connection, they lacked authority to do so.
 {¶ 26} In light of all of the foregoing, we reverse the juvenile court's April 1, 2008 decision. Appellant's first assignment is well-taken and sustained; appellant's second assignment of error is moot.
 {¶ 27} Judgment reversed and remanded to the juvenile court for further proceedings consistent with this opinion and in accordance with the law.
WALSH, P.J., and POWELL, J., concur.
[1] Pursuant to Loc. R. 6(A), we sua sponte remove this appeal from the accelerated calendar.
[2] We note that the family that has custody of some of the child's siblings appealed the juvenile court's decision adjudicating the child dependent and granting temporary legal custody to Adoption Connection. In a single assignment of error, this family asserts that the juvenile court "erred as a matter of law when the adjudication and disposition was held without the appearance of and recommendation from the guardian ad litem." This family was not a party to the proceedings below and has not attempted to intervene as a party. See Civ. R. 24. As a result, this family lacks standing to appeal the juvenile court's decision, and we decline to address its assignment of error. See In re Adoption ofT.B.S., Scioto App. No. 07CA3139, 2007-Ohio-3559. *Page 1