[Cite as *In re K.R.*, 2017-Ohio-7122.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF: K.R., et al.          :

                                             :      CASE NOS. CA2017-02-015

                                             :                       CA2017-02-019

                                                               CA2017-02-024

                                             :

                                             :         O P I N I O N

                                             :            8/7/2017

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 15-D000079 and 15-D000080

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for appellant, B.R.

Joshua G. Burns, P.O. Box 959, Lebanon, Ohio 45036, for appellant, S.L.

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

**S. POWELL, P.J.**

{¶ 1} Mother, the biological mother of K.R. and R.L, and Father, the biological father of K.R., appeal from a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of K.R. and R.L. to appellee, Warren County Children Services ("WCCS" or "the agency"). For the reasons outlined below, we affirm.

{¶ 2} In August 2015, WCCS filed a complaint alleging that K.R., age eight, and R.L., age two, were neglected and dependent children. The complaints alleged that the children

lived with Mother and their grandmother and that the grandmother had a conviction for child endangering. The complaints further alleged that Mother recently tested positive for cocaine and opiates after an arrest on a probation violation. Mother also had an extensive history of drug abuse. The complaint alleged that K.R.'s and R.L.'s fathers had extensive criminal backgrounds.

{¶ 3} The court held an emergency shelter care hearing the same day as the filing of the complaints and granted temporary custody of the children to the agency. In September 2015, the court-appointed attorney Melvin Planas to act as the children's guardian ad litem (GAL).

{¶ 4} The court held an adjudicatory hearing in October 2015. Based on the evidence submitted, the court found that Mother was the primary custodian of the children. The court found that the children's fathers had not had a significant or consistent presence in their lives. The court found both children neglected and dependent and continued temporary custody with the agency. WCCS placed the children in foster care.

{¶ 5} WCCS prepared a case plan for Mother with the goal of reunifying her with the children. The case plan required Mother to address her drug addiction through drug treatment, to achieve and maintain her sobriety and test clean on all drug screens, to complete a mental health assessment, to complete all case plan goals, to maintain stable housing and income, and to comply with all court orders.

{¶ 6} Mother completed an out-patient drug program and regularly visited with her children. However, in the last six months of 2015, Mother repeatedly tested positive for drugs. Because of her inability to remain drug free, Mother's agency caseworker recommended that Mother enter a residential drug treatment program. However, Mother refused residential treatment and continued instead with the out-patient drug program.

{¶ 7} Mother was apparently doing well in maintaining her sobriety for the first half of 2016. However, she relapsed in July 2016 and tested positive for benzodiazepines. This positive test resulted in a probation violation. Mother then stopped participating in any case plan activities for the remainder of the custody case.

{¶ 8} Prior to K.R.'s removal, Father had been incarcerated from July 2014 to July 2015. After his release from jail, Father had two or three visits with K.R. At the time of K.R.'s removal, in August 2015, Father had moved to Kentucky for work.

{¶ 9} Father became aware that WCCS removed K.R. after speaking with K.R.'s grandmother. However, Father did not seek visitation or custody because he was homeless at the time. Father returned to Ohio in November 2015 for drug treatment and entered a residential program. In March 2016, while still in drug treatment, Father contacted an agency caseworker about establishing visitation with K.R. However, Father relapsed soon thereafter and took no further steps to secure visitation.

{¶ 10} In October 2016, WCCS moved for permanent custody of the children. In January 2017, the court held an evidentiary hearing on the agency's motion. At the beginning of the hearing, the court released Attorney Planas from participating "since you haven't met with the child [sic] in such a long period of time."[1]

{¶ 11} The court then heard testimony from Mother, Father, Mother's probation officer, a WCCS caseworker, Father's counselor, Father's fiancé, and the fiancé's father. Mother admitted that she had been struggling with drug abuse for a long time. Mother conceded that in 2014 she overdosed in her car when R.L. was with her and that emergency responders found her with a needle sticking out of her arm. Other than participating in out-patient drug

---

1. The court's decision and entry on the permanent custody motion reflects that the GAL had not met with the children since the time of the removal hearing.

treatment, Mother admitted that she had not completed a case plan objective since her children were removed 17 months prior and had not remedied the conditions that gave rise to the children's removal. Mother was not working and was still living in the same living arrangement with her mother and a brother who had his own drug addiction issues.

{¶ 12} Father testified that he had been sober since September 2016. Father was living in a two-bedroom apartment with his fiancé and her two children. He was working 48 to 56 hours a week. Father agreed that K.R. and R.L. were very close and said that if he had to raise R.L. he would do so to obtain custody of his daughter.

{¶ 13} After the hearing, the court interviewed K.R. in chambers. K.R. asked the court to keep her together with R.L. The court later issued a decision and entry granting custody of K.R. and R.L. to WCCS. The court found that Father abandoned K.R. The court found that R.L.'s father abandoned R.L.[2] The court additionally found that neither K.R. nor R.L. could be placed with Mother or their respective fathers within a reasonable time and that they should not be placed with them. Finally, the court found that granting permanent custody of K.R. and R.L. to WCCS was in the children's best interest.

{¶ 14} Mother appeals the decision granting permanent custody of the children to WCCS. Father appeals the decision granting permanent custody of K.R. to WCCS. Collectively, Mother and Father raise three assignments of error.

{¶ 15} Mother's Assignment of Error:

{¶ 16} THE TRIAL COURT ERRED BY FAILING TO APPOINT A NEW GUARDIAN AD LITEM ONCE THE ORIGINAL GUARDIAN WAS REMOVED FROM THAT POSITION AS REQUIRED BY R.C. 2151.281(D).

{¶ 17} Mother argues that the court erred by not appointing another GAL for the

---

2. R.L.'s father never participated in the case and his whereabouts were not known to WCCS.

children after Attorney Planas failed to discharge his duties as GAL. Mother argues that the court's error prejudiced her because a GAL properly following his or her responsibilities would have observed the bond between Mother and children during visits and would have been able to relay this observation to the court. Mother also suggests that the GAL might have assisted Mother in completing case plan services or securing housing. The agency argues that Mother failed to object and has not demonstrated plain error, i.e., that the outcome of the custody case would have been different had the court appointed another GAL.

{¶ 18} R.C. 2151.281(B)(1) provides that the court "shall" appoint a GAL to protect the interest of any child in permanent custody proceedings. R.C. 2151.281(D) states that courts "shall require the guardian ad litem to faithfully discharge the guardian ad litem's duties and, upon the guardian ad litem's failure to faithfully discharge the guardian ad litem's duties, shall discharge the guardian ad litem and appoint another guardian ad litem."

{¶ 19} The record contains scant evidence concerning the work Attorney Planas performed as the children's GAL. Attorney Planas filed fee applications for a total of around three hours of time on the case. That time was exclusively related to appearances at several hearings. Attorney Planas did not file a GAL's report. The court's entry granting permanent custody to the agency states: "[d]ue to the fact that Mr. Planas had not met with the minor Children since the disposition in 2015, the Court removed him as the guardian ad litem and excused [him] from participating in the final permanent custody hearing."

{¶ 20} The record supports the court's conclusion that Attorney Planas failed in his duties as the children's GAL and therefore the court properly removed him under R.C. 2151.281(D). However, R.C. 2151.281(D) required the court to appoint the children another GAL. Accordingly, the court erred.

{¶ 21} Nonetheless, Mother did not object to the court's failure to appoint another

GAL. Mother is therefore limited to demonstrating plain error. *In re Lay*, 12th Dist. Butler No. CA1997-06-115, 1998 Ohio App. LEXIS 2007, *4 (May 4, 1998). The plain error doctrine is not favored in civil cases. *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 20. The Ohio Supreme Court defined plain error in the civil context as an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Plain error will be recognized only in the extremely rare case involving exceptional circumstances. *In re E.J.*, 12th Dist. Warren No. CA2014-07-098, 2015-Ohio-731, ¶ 10.

{¶ 22} Other courts have determined that when a parent cannot demonstrate prejudice arising from the action or nonaction of a GAL, then any potential error constitutes harmless error. *In re E.W.*, 3d Dist. Union No. 14-10-31, 2012-Ohio-308, ¶ 36; *In re Sanders*, 5th Dist. Tuscarawas No. 2004 AP 08 0057, 2004-Ohio-5878, ¶ 76; *In re Ridenour*, 11th Dist. Lake Nos. 2003-L-146, 2003-L-147, and 2003-L-148, 2004-Ohio-1958, ¶ 24; *In re Malone*, 4th Dist. Scioto No. 93CA2165, 1994 Ohio App. LEXIS 2140, *31-32 (May 11, 1994); *In re Doe*, 6th Dist. Lucas No. L-92-296, 1993 Ohio App. LEXIS 4431, *33 (Sept. 17, 1993).

{¶ 23} Mother has not demonstrated prejudice in this case. Mother argues that a new GAL could have observed her visits with the children and relayed those observations to the court. However, Mother testified that she was bonded with her children and that her visits went well. The WCCS caseworker observed the visits and corroborated Mother's testimony. The agency did not introduce any contradictory evidence. Accordingly, any additional testimony on this subject would have been cumulative and would not have changed the outcome of the hearing.

{¶ 24} Mother's claim that the GAL could have assisted her in completing case plan

objectives and obtaining stable housing is simply speculative. Moreover, Mother's behavior throughout the case reflected a rejection of assistance towards achieving a life of stability and sobriety. The record gives us no reason to believe that Mother would behave differently towards a GAL.

{¶ 25} Finally, we note that the record demonstrates that the court spoke with K.R. *in camera* about her wishes with respect to a custody arrangement. Thus, the court had perspective on the wants and needs of the children. Accordingly, although the court should have appointed the children a GAL pursuant to R.C. 2151.281(D), any error was harmless. Mother has an extensive history of drug abuse and undertook almost no effort to remedy the situation that caused the removal of her children. Mother cannot demonstrate a different result had the court appointed the children another GAL. Mother's assignment of error is overruled.

{¶ 26} Father's Assignment of Error No. 1:

{¶ 27} THE TRIAL COURT ERRED BY FINDING THAT APPELLANT ABANDONED HIS CHILD.

{¶ 28} Father argues that the trial court erred in finding that he abandoned K.R. because the court never established his paternity, he had no parental rights to K.R., and prior to removal he only visited with K.R. when Mother would allow him parenting time.

{¶ 29} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); R.C. 2151.414(B)(1). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re*

*J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 21.

{¶ 30} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if the court makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e). Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 22.

{¶ 31} Father disputes the juvenile court's finding, under R.C. 2151.414(B)(1)(b), that he abandoned K.R. A child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). Father does not dispute that he failed to visit or maintain contact with K.R. for more than 90 days. In fact, Father admitted at the permanent custody hearing in January 2017 that he had not seen K.R. since before her removal in August 2015. Accordingly, sufficient credible evidence existed from which the court could conclude that Father abandoned K.R.

{¶ 32} However, Father argues that abandonment does not apply to the legal

relationship between he and K.R. Father argues that the record lacks any evidence that he had any parental rights to K.R, e.g., the court did not establish his paternity. Father cites no legal authority for this argument.

{¶ 33} Father testified at the hearing that he was K.R.'s father. Father also testified that he first inquired about establishing visitation with K.R. in March 2016. Accordingly, approximately ten months prior to the permanent custody hearing Father recognized his parental rights and took minimal steps to exercise them. Nonetheless, Father did nothing to secure visitation until the agency filed the permanent custody motion. Accordingly, sufficient credible evidence exists that Father abandoned K.R. This assignment of error is overruled.

{¶ 34} Father's Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED IN FINDING THAT THE CHILD COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME.

{¶ 36} Father argues that the court erred in finding that K.R. could not be placed with him in a reasonable amount of time based on his failure to remedy the conditions that caused WCCS to seek temporary custody of K.R. and for his failure to utilize case services to gain custody of K.R. Father argues that the agency failed to properly serve him with the underlying neglect and dependency complaint through publication and that this prejudiced him because it kept him from participating in the agency's case plan for reunification. Father admits receiving notice of the agency's motion for permanent custody approximately two months before the hearing date but argues that it was too late then to take meaningful steps to gain custody of his daughter. Father argues that he was deprived of his procedural due process rights for the same reasons.

{¶ 37} Father did not object on the basis that the agency failed to properly serve him with the initial neglect and dependency complaint. And Father did not object because of

insufficient time to prepare a defense to the agency's permanent custody motion. Accordingly, Father is limited to a review for plain error. *In re Lay*, 1998 Ohio App. LEXIS 2007 at *4.

{¶ 38} With respect to service of the initial neglect and dependency complaint, Civ.R. 4.4(A)(1) details the requirements for service of process by publication where a defendant's residence cannot be discovered:

> [b]efore service by publication can be made, an affidavit of a party or his counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the defendant is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the defendant, and that the residence of the defendant cannot be ascertained with reasonable diligence.

{¶ 39} The agency first attempted to serve Father personally with a copy of the complaint at a Dayton, Ohio address. The service return indicated unsuccessful service because Father was residing in Kentucky. The agency soon after requested service by publication. In support of the request, an agency caseworker filed an affidavit listing the caseworker's attempts to acquire an address for Father. The caseworker reviewed the agency's records, talked to Father's family members, and conducted a search on the Internet. Finally, the caseworker averred that she had a phone conversation with Father. Thus, the agency made reasonable efforts to serve Father with the complaint. Accordingly, Father was properly served with notice of the complaint by publication.

{¶ 40} However, even if we found service by publication erroneous, we find Father suffered no prejudice on the basis that he failed to utilize case services. The record demonstrates that Father was aware that K.R. had been removed from Mother's custody shortly after removal occurred in August 2015. Father testified at trial that he learned about the custody case from K.R.'s maternal grandmother. Nonetheless, Father took no steps to

involve himself in K.R.'s custody case until March 2016. At that time, Father contacted a WCCS caseworker about establishing visitation but took no other affirmative steps towards that goal. Father failed to actively participate in the custody case until the agency filed its permanent custody motion. Father agreed at the hearing that he was "content to let [Mother] work the Case Plan, and, work towards reunification with [K.R.]." In sum, the record contains sufficient credible evidence that Father failed to utilize case services or take other meaningful actions to gain custody of K.R in a timely manner.

{¶ 41} Having found that Father abandoned the child, the additional argument of whether the trial court erred in concluding that the child cannot be placed with Father within a reasonable time is rendered moot and need not be addressed. *See In re M.T.*, 12th Dist. Warren No. CA2016-11-100, 2017-Ohio-1334, ¶ 30 (finding that child has been in temporary custody of agency for 12 or more months of a consecutive 22-month period renders moot the argument that child cannot be placed with parent within a reasonable time); *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 39-40 (same).

{¶ 42} With respect to due process, Father is constitutionally entitled to notice and the opportunity to be heard before being deprived of the care and custody of his child. *In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 63, citing *Kranz v. Kranz*, 12th Dist. Warren No. CA2012-05-038, 2013-Ohio-1113, ¶ 16. We find no due process issue with respect to the agency's notice to Father of the initial neglect and dependency complaint for the reasons just discussed. We also find no due process concerns with respect to notice of the permanent custody hearing. The agency personally served Father with a copy of the motion in November 2016. Finally, Father had an opportunity to be heard. He appeared at and participated in the permanent custody hearing. He testified and brought witnesses to testify on his behalf. Accordingly, Father has not

demonstrated a denial of due process and, on this basis, the assignment of error is overruled.

**{¶ 43}** Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.