[Cite as *In re A.S.*, 2026-Ohio-680.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

In re A.S., M.S.

Court of Appeals No. {86}WM-25-019
{86}WM-25-020

Trial Court No. 20253001
20253002

**DECISION AND JUDGMENT**

Decided: February 27, 2026

* * * * *

Rachael Sostoi, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In these consolidated appeals, appellant, R.S. ("father"), appeals the November 13, 2025 Judgment Entry of the Williams County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of his two children, A.S. (D.O.B. 06/07/2017) and M.S. (D.O.B. 10/16/2018) to appellee, Williams County Department of Job and Family Services ("the Agency").[1]  For the following reasons, we affirm.

---

[1] Five children were the subject of the consolidated permanent custody proceeding in this matter—A.S., M.S., A.J., Ma.J., and Mi.J.  In the same Judgment Entry that terminated

## I. Background and Facts

{¶ 2} On November 11, 2024, Williams County Job and Family Services ("the Agency") received a report of alleged medical neglect of A.S.[2] One day later, the Agency visited mother-L.I.'s home to investigate. Upon arrival, the investigator saw food and feces on the floor, an overflowing litterbox, food and dishes in the sink and on the counter, the laundry room overflowing with clothes, and the children's rooms cluttered with clothing and toys. Mother-L.I. cleaned the home while the investigator was present and resolved the concerns of the Agency.

{¶ 3} On January 6, 2024, the Agency received a report that mother-L.I. did not pick up her children from school. Law enforcement and school personnel went to mother-L.I.'s home. A three-year-old child answered the door and law enforcement could see that the three-year-old, a two-year-old, and a one-year-old were unsupervised. They found mother-L.I. asleep and had to yell several times to wake her up.

{¶ 4} On January 7, 2024, the Agency asked for ex parte custody of the children, which was granted by the Williams County Court, Juvenile Division. All five children were placed together in a foster home at that time.

father's parental rights, the trial court also terminated the parental rights of mother-L.I. and father-T.J. Mother-L.I. is the mother of all five children, and father-T.J. is the father of A.J., Ma.J., and Mi.J. Neither mother-L.I. nor father-T.J. appealed.

[2] The parties and children in this matter were involved in two prior agency cases—one in 2022 and one in 2023. In the 2022 case, A.S., M.S., and Mi.J. were found dependent, while A.J. was found to be an abused child. Ma.J was not born yet. Once Ma.J was born, the Agency was granted emergency custody in what became the 2023 case. The matter concerning Ma.J was ultimately dismissed, father-T.J. was ordered to not have contact with the children, and after 24 months, both cases were closed and the children were returned to mother-L.I.

2.

{¶ 5} The next day, the Agency filed complaints alleging that the children were neglected pursuant to R.C. 2151.03(B). An emergency hearing was held that same day. Mother-L.I. was present. At the time of this hearing, father's location was unknown to the court. The court found that at the time of removal, probable cause existed to believe that the children were in immediate or threatened physical and emotional harm, and that their safety was in peril. The court ordered that the children be placed in the emergency custody of the Agency effective January 8, 2025, and that all visitation was to be supervised until further order of the court.

{¶ 6} On January 10, 2025, the court appointed a Guardian Ad Litem ("GAL").

{¶ 7} Prior to the February 26, 2025 adjudication hearing, father's whereabouts were made known and he was properly served by posting. At the adjudication hearing, father was not present. Mother-L.I. and father-T.J. were and they consented to a finding of neglect as it related to all five children. The court adjudicated the children as neglected, and they were placed in the temporary custody of the Agency.

{¶ 8} On April 3, 2025, the first GAL report was filed. In it, the GAL recommended that the children continue placement in the temporary custody of the Agency. That same day, the dispositional hearing was held. At this hearing, it was noted that father was incarcerated in Michigan with the earliest release date in June 2026, and the latest in June 2034.[3] He was removed from the case plan due to his incarceration.

---

[3] According to the record, father is incarcerated in Michigan for carrying a concealed weapon and possession of a controlled substance—methamphetamine. After father is released from Michigan, he has a 30-month sentence in Ohio for another methamphetamine-related charge.

3.

{¶ 9} On April 9, 2025, the Agency filed a motion for permanent custody for each of the children and requested that all parents' rights be terminated. The GAL recommended the same in the third GAL report made on July 17, 2025.

{¶ 10} On August 25, 2025, the fourth and final GAL report was filed. In that report, the GAL again recommended that the children be placed in the permanent custody of the Agency. That same day, the GAL also filed a motion to withdraw from the matter due to leaving private practice. The court granted the motion. No new GAL was appointed.

{¶ 11} On September 29, 2025, the court held the permanent custody hearing. Mother-L.I. and father-T.J. were not in attendance. Due to his incarceration, father appeared via Zoom around two hours into the hearing.

{¶ 12} The court heard testimony from father-T.J.'s probation officer, the Agency caseworker/supervisor Melissa Reynolds, and father. The GAL was not in attendance and the parties conceded that they did not subpoena her. The court admitted all reports of the GAL into evidence and ruled the GAL complied with all aspects of Rule 48 of the Rules of Superintendence.

{¶ 13} On November 13, 2025, the court found by clear and convincing evidence that no child could be placed with either parent within a reasonable time or should not be placed with their parents pursuant to R.C. 2151.414(B)(l)(a), and that in accordance to R.C. 2151.414(B)(l)(b), each child had been abandoned by their parents, as no parent had been in contact with any child for at least 265 days. Additionally, pursuant to R.C.

4.

2151.414(B)(l)(d), the court found that the children, excluding Ma.J., had been in the custody of the Agency for more than 12 months out of a consecutive 22-month period.

{¶ 14} Turning to the (E) factors, the court found that R.C. 2151.414(E)(1), (2), (4), (6), (10), (12), and (14) were applicable.

{¶ 15} First, the court found under R.C. 2151.414(E)(1), each parent had failed continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home. Specific to this appeal, the court found that father had an extensive drug history, which led to his incarceration in Michigan, and that he had been incarcerated since the date of the filing of the complaints. As such, the children could not be returned to father.

{¶ 16} In accordance to R.C. 2151.4 l 4(E)(2) the court found that each parent had chemical dependency so severe that it made them unable to provide an adequate permanent homes for the children.

{¶ 17} Pursuant to R.C. 2151.414(E)(4) the court found that each parent had demonstrated a lack of commitment toward the children by showing an unwillingness to provide an adequate permanent home for the children; by failing to regularly support, visit and communicate with the children when each was able to do so; and failing to comply with the case plan. Relevant to this appeal, the court found that father chose to have minimal contact with his children, and had been unable to engage in the children's cases due to his incarceration.

{¶ 18} The court found that each parent had abandoned their children under R.C. 215l.414(E)(6). Relevant to this appeal, father had not had contact with A.S. and M.S.

5.

since they were very young—according to the record, three and one years old respectively.

{¶ 19} In accordance to R.C. 2151.414(E)(12), the court found that father was incarcerated at the time of the disposition hearing and the filing of the motion for permanent custody. Additionally, it noted that based upon his own testimony, father is likely to be incarcerated for more than 18 months from the date of the disposition hearing and/or motion filing.

{¶ 20} Finally, regarding R.C. 2151.414(E)(14), the court found each parent unwilling to provide food, clothing, shelter, and other basic needs for the children. Relevant to this appeal, the court again specifically focused on father's incarceration.

{¶ 21} The court determined that there was clear and convincing evidence that it was the best interest of each child to grant permanent custody to the Agency pursuant to R.C. 2151.414(D)(1) and terminated the parental rights of each parent.

{¶ 22} Father appealed and assigned the following errors for our review:

1. THE TRIAL COURT ERRORED (sic) WHEN IT FAILED TO APPOINT A NEW GUARDIAN AD LITEM AFTER GRANTING THE WITHDRAW (sic) OF THE PRIOR.

2. THE APPELLANT WAS DEPRIVED OF THE RIGHT TO CROSS-EXAMINE THE GAL IN THE MATTER WHEN THE TRIAL COURT RELIED ON THE REPORT OF THE GAL IN MAKING ITS RULING.

6.

## II. Law and Analysis

### A. The law of permanent custody

{¶ 23} Parents have a fundamental liberty interest in the care, custody, and control of their children. *In re K.H.*, 2008-Ohio-4825, ¶ 39. However, the right to parent one's children is not absolute; it does not give a parent a right to abuse or neglect a child. *Id.* at ¶ 40. The state has broad authority to intervene to protect children from abuse and neglect. *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing R.C. 2151.01. "An award of permanent custody, which terminates parental rights, is a last resort and is only justified when it is necessary for the welfare of the child." (Citation omitted.) *In re L.R.-L.*, 2023-Ohio-2071, ¶ 24 (10th Dist.). Because granting permanent custody terminates parental rights, "parents 'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. Aug. 30, 1991).

{¶ 24} R.C. 2151.414 sets forth "specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.*, 2020-Ohio-5102, ¶ 18, citing *In re C.F.* at ¶ 22. Under that provision, the court must first find that any of the following circumstances described in R.C. 2151.414(B)(1)(a)-(e) exists:

> (a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

7.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a) through (e).

{¶ 25} If the court finds that R.C. 2151.414(B)(1)(a) applies, it must consider both whether any of the factors enumerated in R.C. 2151.414(E) are present that would indicate that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent *and* whether granting permanent custody to the agency is in the child's best interest. *In re B.K.*, 2010-Ohio-3329, ¶ 42-43 (6th Dist.).

{¶ 26} If the court finds that at least one of the factors in R.C. 2151.414(E) exists, it "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." R.C. 2151.414(E).  The court's finding that any (E) factor exists is sufficient to support an award of permanent custody to the agency. *In re S.J.*, 2024-Ohio-5137, ¶ 29 (6th Dist.); *In re Carlos R.*, 2007-Ohio-6358, ¶ 38 (6th Dist.) ("[A] court need only find one factor under R.C. 2151.414(E) to support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent….").

{¶ 27} As relevant here, the court found that R.C. 2151.414(E)(1), (2), (4), (6), (10), (12), and (14) were applicable.  The relevant sections of the statute provide:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to

8.

be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code, and the child or a sibling of the child was a victim of the offense, or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

* * *

(10) The parent has abandoned the child.

* * *

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from

suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

R.C. 2151.414(E).

{¶ 28} After finding that at least one factor in R.C. 2151.414(E) applies, the court must then determine whether awarding permanent custody to the agency is in the child's best interest by considering the factors in R.C. 2151.414(D)(1). *In re S.J.* at ¶ 23. Pursuant to R.C. 2151.414(D)(1), the juvenile court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e).

{¶ 29} All of the court's findings under R.C. 2151.414 must be by clear and convincing evidence. *See* R.C. 2151.414. "Clear and convincing evidence" is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is

required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954); *In re Alexander C.,* 2005-Ohio-6134, ¶ 37 (6th Dist.).

{¶ 30} We review a trial court's determination in a permanent custody case under a manifest-weight-of-the-evidence standard. *In re P.W.*, 2012-Ohio-3556, ¶ 20 (6th Dist.); *see also In re Z.C.*, 2023-Ohio-4703, ¶ 11 ("Given that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met, * * * the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties."). In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

### B. The appointment of a new GAL

{¶ 31} In his first assignment of error, father argues that the trial court erred when it failed to appoint a new GAL after granting the withdrawal of the original GAL due to a job change roughly one month before the permanency proceeding. Father contends that this failure left A.S. and M.S. without a GAL, and that such an action is contrary to Ohio law. While we agree with father that the trial court erred, we find that the error was not plain error.

11.

{¶ 32} The appointment of a GAL in abuse and neglect cases is governed by a combination of statutes and court rules. Specifically, R.C. 2151.281(B)(1) provides that "[t]he court *shall* appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any [permanent custody proceeding]." (Emphasis added.) Additionally, Juv.R. 4(B) provides that "[t]he court *shall* appoint a guardian ad litem to protect the interests of a child … in a juvenile court proceeding when: … (5) Any proceeding involves allegations of abuse, neglect, or dependency … as soon as possible after the commencement of such proceeding." (Emphasis added.). Moreover, Sup.R. 48.02(C) provides that "[a] court *shall* appoint a guardian ad litem in abuse, neglect, dependency, unruly, and delinquency cases as required by rule or statute." (Emphasis added.).

{¶ 33} "When used in a statute, the word 'shall' denotes that compliance with the terms of that statute is mandatory." *In re A.G.B.*, 2007-Ohio-4753, ¶ 13 (4th Dist.) citing *Smith v. Leis,* 2005-Ohio-5125, ¶ 62. "In a child abuse, neglect, or dependency case, the court *must* appoint a guardian ad litem to protect the interests of the child. R.C. 2151.281(B)(1)." (Emphasis added.) *In re C.T.*, 2008-Ohio-4570, ¶ 6; *see also Matter of C.W.*, 2025-Ohio-282, ¶ 39 (10th Dist.); *In re A.K.*, 2012-Ohio-4430, ¶ 21-4 (9th Dist.); *In re A.G.B.* at ¶ 12-13; *In re F.R.*, 2008-Ohio-6570, ¶ 15 (12th Dist.); and *In re Adoption of Howell*, 77 Ohio App.3d 80, 92 (4th Dist. Sept. 9, 1991).

12.

**{¶ 34}** Additionally, R.C. 2151.281(G) governs the length of service for a GAL:

[I]n any case in which a guardian ad litem is to be appointed for an alleged or adjudicated abused [or] neglected [child] … the court shall appoint the guardian ad litem in each case as soon as possible after the complaint is filed, the request for an extension of the temporary custody agreement is filed with the court, or the request for court approval of the permanent custody agreement is filed. The guardian ad litem or the guardian ad litem's replacement shall continue to serve until any of the following occur:

\* \* \*

(2) All dispositional orders relative to the child have terminated;

\* \* \*

(6) The guardian ad litem resigns or is removed by the court and a replacement is appointed by the court.

**{¶ 35}** The law is clear that the trial court was required to have a GAL appointed throughout the neglect and permanency proceedings.  By permitting the GAL to withdraw from the case on August 25, 2024, and permitting the case to continue to the permanency hearing on September 29, 2025, and the November 13, 2024 Judgment Entry, the trial court failed to comply with R.C. 2151.281(B)(1), Juv.R. 4(B), and Sup.R. 48.02(C).  Accordingly, we find that the juvenile court erred by not appointing a new GAL for the remainder of the case.

**{¶ 36}** Our analysis, however, does not end there.  Because father did not object to the court's failure to appoint a new GAL, he is therefore limited to demonstrating plain error. *In re B.E.*, 2014-Ohio-3178, ¶ 17 (4th Dist.); *In Matter of K.R.*, 2017-Ohio-7122, ¶ 21 (12th Dist.).  Plain error in the civil context is an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the

13.

legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 37} The purpose of the GAL is to ensure that the child's best interests are represented and protected. *In re C.B.*, 2011-Ohio-2899, ¶ 14, citing R.C. 2151.281(B) and Sup.R. 48(B)(1). "In this regard, the guardian's role is to 'perform whatever functions are necessary to protect the best interest of the child, including, but not limited to * * * monitoring the services provided the child by the public children services agency * * * [and filing] any motions and other court papers that are in the best interest of the child.'" *Id.* quoting R.C. 2151.281(I).

{¶ 38} Here, the GAL had been an active participant in the case from its inception, she had submitted four reports—including her final report and recommendation, and the trial court appropriately found that she had satisfied the requirements of all aspects of Rule 48 of the Rules of Superintendence. The only duty left of the GAL at the time of her withdrawal was to testify at the permanency hearing.

{¶ 39} Courts of appeals have reversed cases where the lack of appointment or failure of the GAL resulted in the children's interests not being represented. *See e.g., In re A.K.*, 2012-Ohio-4430, at ¶ 29 (9th Dist.) ("Because the trial court failed to consider any evidence from a guardian ad litem or the children directly, the children were denied their right to have a voice at this dispositional hearing that determined their permanent placement."); *In re F.R.*, 2008-Ohio-6570 (12th Dist.); *In re A.G.B.*, 2007-Ohio-4753, at ¶ 19 (4th Dist.); *In the Matter Of: Strowbridge*, 1982 WL 3565, at *1 (4th Dist. Oct. 26, 1982). Such is not the case here.

14.

{¶ 40} As an additional note, father cannot show that he was prejudiced in any way by the error. He testified that he will be in prison in Michigan until at least June 2026, but possibly until 2034. He also testified that he has to serve another 6 to 30 month sentence in Ohio following his release. As noted by the trial court in its (E) factor analysis, father is unavailable to care for his daughters and will not be available for the near future.

{¶ 41} Accordingly, although the court erred when it did not appoint the children a new GAL after their original GAL withdrew from the case, this was not plain error. The children's interests were represented to the court, the GAL satisfied all her duties except testifying at the permanency hearing, and father cannot show that he was prejudiced because of his lengthy incarceration. As such, we find father's first assignment of error not well-taken.

### C. Father's right to cross-examine the GAL

{¶ 42} In his second assignment of error, father argues that he was deprived of his right to cross-examine the GAL, because the GAL was not present at the permanency hearing but the trial court still relied on her report in its termination decision. We disagree.

{¶ 43} The Supreme Court of Ohio has held that "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." *In re Hoffman*, 2002–Ohio–5368, syllabus. "Without these safeguards, there are no measures

15.

to ensure the accuracy of the information provided and the credibility of those who made statements." *Id.* at ¶ 25.

{¶ 44} However, some appellate courts have distinguished *Hoffman*—where the court did not allow a parent to cross-examine the GAL—from situations where parties had the opportunity, but chose not to cross-examine the GAL at trial. In the latter situation, courts have found that by having the opportunity to cross-examine the GAL and not doing so, the contesting party waives their right to cross-examination. *See In re A.L.D.*, 2008-Ohio-3626, ¶ 20 (10th Dist.); *In re J.M.*, 2008-Ohio-6357, ¶ 17 (7th Dist.) (in cases "dealing with waiver, the key seems to be whether the parent had an opportunity to cross-examine the GAL."). *See also In re A.D.*, 2005-Ohio-5441, ¶ 8 (8th Dist.) (finding that by failing to object to the trial court's use of the report and failing to request to cross-examine the GAL, appellant had waived all but plain error on appeal.).

{¶ 45} Here, the GAL was not at the permanency hearing because she had withdrawn from the case after submitting her final report. At the hearing, when asked if any of the parties had subpoenaed the GAL, each party—the Agency, father, mother-L.I., and father-T.J.—admitted that they did not issue a subpoena for the GAL to attend the hearing. After confirming that no one subpoenaed the GAL, the court stated that the GAL report would be reviewed as filed, and then added that "[i]f anyone believes that that's necessary [to subpoena the GAL] for day two (2), they can certainly take the steps necessary to have her present." The court later admitted all reports of the GAL into evidence and ruled that the GAL complied with all aspects of Rule 48 of the Rules of

16.

Superintendence. At no point did anyone object to the absence of the GAL for purposes of cross-examination.

{¶ 46} Accordingly, the record is clear that father had the opportunity to cross-examine the GAL and made the choice not to do so, effectively waiving his argument. We find this case distinguishable from *Hoffman* and find father's second assignment of error not well-taken.

### III. Conclusion

{¶ 47} For the foregoing reasons, November 13, 2025 Judgment Entry of the Williams County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

_____
JUDGE

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.