[Cite as *In re B.K.*, 2017-Ohio-7773.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re B.K., A.K.

Court of Appeals Nos. L-17-1082

Trial Court No. JC 15251209

**DECISION AND JUDGMENT**

Decided: September 22, 2017

* * * * *

Stephen D. Long, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is an appeal from the March 14, 2017 judgment of the Lucas County

Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant

M.E. ("mother") and T.K. ("father"), and awarding permanent custody of A.K. (born

December, 2014) and B.E. (born December 2011) to appellee, Lucas County Children Services ("LCCS"). For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Preliminarily, we note that father consented to an award of permanent custody of the children to LCCS. He is not a party to this appeal. Thus, our discussion and analysis will focus on the facts as they pertain to mother.

{¶ 3} On October 30, 2015, LCCS filed a complaint and motion for temporary custody. The complaint alleged, in relevant part, that the children were dependent and neglected; mother was using heroin regularly and the children "had a bedroom with blankets on the floor, but no beds." A shelter care hearing was held and the children were placed in the temporary custody of LCCS. Mother was offered case plan services with a goal of reunification.

{¶ 4} On September 29, 2016, LCCS filed a motion for permanent custody. The matter went to trial on February 28, 2017.

{¶ 5} LCCS caseworkers testified that mother's case plan required her to undergo a dual assessment for mental health and substance abuse issues. The plan also required her to take parenting classes.

{¶ 6} Mother completed her substance abuse assessment in February 2016 and was found to be opiate dependent. She was referred to A Renewed Mind to begin intensive outpatient treatment. A few months after she began treatment, mother starting using heroin again. She was discharged from A Renewed Mind as unsuccessful. In

2.

October of 2016, mother had a second substance abuse assessment. Mother began weekly counseling at the Zepf Center, referred, once again to intensive outpatient treatment.

{¶ 7} On December 31, 2016, mother gave birth to a third baby. At birth, the child tested positive for opiates. LCCS became involved with the baby in a separate action.

{¶ 8} In regard to visitation, caseworkers testified that mother missed more than half of her scheduled visits with A.K. and B.E.

{¶ 9} Caseworkers testified that A.K. and B.E. were placed together and doing well in foster care. The caseworker assigned to the family at the time of trial opined that permanent custody would be in the children's best interest.

{¶ 10} At trial, mother admitted that she had a substance abuse problem and that she used heroin a "couple of days" before trial. She also admitted that she missed "a little over half" of the scheduled visits with A.K. and B.E. Mother indicated that she loves her children and that "it would be hard without having them." She asked the court to consider giving her an "extension" so that she could get clean and sober, find a place to live and take parenting classes.

{¶ 11} The guardian ad litem testified that during the 16 months the case was pending, she met with A.K. and B.E. on several occasions. When asked whether she agreed with the LCCS recommendation of permanent custody, the guardian ad litem stated:

At this point there's really no other alternative available to the children. And mother has for the most part not really ever engaged and

3.

been successful in any period of sobriety or any of her services for more than a couple of months.

* * *

Their parents appear to have very significant substance issues that prevent them from doing what they need to regain custody of the children to properly parent the children

{¶ 12} On March 14, 2017, the trial court terminated mother's parental rights and awarded permanent custody of A.K. and B.E. to LCCS. Mother appealed.

{¶ 13} On July 11, 2017, mother's appointed counsel filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). He asserts that after review of the record he was unable to identify any colorable error which he feels would support reversal of the trial court's decision. Counsel submits one potential assignment of error for consideration:

THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE; AND THE GRANT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*. *Id.* There, the Supreme Court of the United States found that if counsel, after a conscientious examination of the case, determines the appeal to be wholly frivolous, he should advise

4.

the court and request permission to withdraw. *Id.* at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* In addition, counsel must furnish the client with a copy of the brief, request to withdraw, and allow the client sufficient time to raise any matters she chooses. *Id.* Once these requirements have been satisfied, the appellate court must conduct a full examination of the proceedings held below and determine if the appeal is indeed frivolous. *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law. *Id.* The procedures in *Anders* apply to appeals involving the termination of parental rights. *In re B.H.*, 6th Dist. Lucas No. L-15-1166, 2015-Ohio-5495, ¶ 5, citing *Morris v. Lucas Cty. Children Servs. Bd.*, 49 Ohio App.3d 86, 550 N.E.2d 980 (6th Dist.1989), syllabus.

{¶ 15} Here, appellant's counsel fulfilled the requirements set forth in *Anders*. Appellant did not file a pro se brief or otherwise respond to counsel's request to withdraw. We shall proceed with an examination of the potential assignment of error set forth by appellant's counsel as well as the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.

{¶ 16} Before a trial court may terminate parental rights and award permanent custody of a child to the moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable

5.

time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re R.L.*, 9th Dist. Summit Nos. 27214, 27233, 2014-Ohio-3117, ¶ 22, citing R.C. 2151.414(B)(1) and 2151.414(B)(2); *In re William S.*, 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996).

{¶ 17} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11. The factual findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Thus, judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. *Id.*

{¶ 18} Here, the trial court found that the first prong of the permanent custody test was satisfied by a finding that the child could not be placed with either parent in a reasonable time or should not be placed with either parent. *See* R.C. 2151.414(B)(1)(a). In so finding, the court relied upon R.C. 2151.414(E)(1), (2), and (4).

{¶ 19} R.C. 2151.414(E) provides, in relevant part:

> (1) Following the placement of the child outside the child's home
> and notwithstanding reasonable case planning and diligent efforts by the

6.

agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) * * * chemical dependency of the parent that is so severe that it makes parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child * * *.

{¶ 20} As to R.C. 2151.414(E)(1), the trial court found that mother was offered reasonable case plan services to address her opiate dependency. On two occasions, mother was referred to intensive outpatient treatment. She began intensive outpatient

treatment, relapsed, and in time, began counseling with the Zepf Center. At the time of trial she had begun the intensive outpatient treatment to which she had been referred. However, mother admitted to using heroin two days before trial.

{¶ 21} As to R.C. 2151.414(E)(2), the trial court found that at the time of trial, mother was "not able to provide an adequate permanent home for the children * * * as she has not has not been able to demonstrate a long period of sobriety and is not likely to provide that home for at least a year." The trial court indicated that mother's addiction to heroin began prior to LCCS involvement and that despite beginning intensive outpatient treatment, mother was not able to successfully complete the substance abuse services.

{¶ 22} As to R.C. 2151.414(E)(4), the trial court found that mother failed to demonstrate a commitment toward the children by "failing to regularly support, visit, or communicate with the children when able to do so." The trial court found that mother missed over half of her scheduled visitations with the children.

{¶ 23} In regard to the second prong of the permanent custody test, the trial court determined, pursuant to R.C. 2151.414(D)(1), that the "children are in need of a legally secure permanent plan and that this cannot be achieved without a grant of permanent custody to LCCS." At the time of trial, the children had been in the temporary custody of LCCS for 16 months. During that time, the children were placed together. Prior to trial, the children had begun visiting with persons interested in adopting them. At trial, both the guardian ad litem and the caseworker recommended an award of permanent custody to LCCS.

8.

{¶ 24} This court has thoroughly reviewed the record of proceedings in the trial court, including the trial testimony and exhibits. We find that the trial court's decision was supported by clear and convincing evidence, and was not against the manifest weight of the evidence. Appointed counsel's potential assignment of error is without merit.

{¶ 25} Upon our own independent review of the record, we find no grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted.

{¶ 26} The March 14, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                _____

                                                            JUDGE

James D. Jensen, P.J.

_____

Christine E. Mayle, J.                                       JUDGE
CONCUR.

_____

                                                            JUDGE

9.