[Cite as *In re S.J.*, 2024-Ohio-5137.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re S.J.

Court of Appeals No.  L-24-1118

Trial Court No.  JC23297492

**DECISION AND JUDGMENT**

Decided:  October 23, 2024

* * * * *

Rebecca L. West-Estell, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, J.,**

## I.  Introduction

{¶ 1} Appellant, C.J. ("Mother"), appeals from the May 10, 2024 judgement of the Lucas County Court of Common Pleas, Juvenile Division granting judgment in favor of Lucas County Children's Services ("LCCS") on its complaint seeking an award of permanent custody of her child, S.J. ("Child").  For the following reasons, we affirm the trial court's judgment.

## A. Facts and Procedural Background

{¶ 2} Child was born to Mother[1] on September 4, 2023 in Michigan. After she and Child moved back to Ohio, LCCS initiated the underlying case on December 11, 2023, with the filing of its "Complaint in Dependency: Permanent Custody and Motion for Shelter Care Hearing." LCCS's complaint detailed Mother's significant history with LCCS and described her conduct in prior cases that resulted in the termination of her parental rights in regard to Child's siblings.[2]

{¶ 3} As to the present case, LCCS alleged that Child was a dependent child as defined by R.C. 2151.04. LCCS further alleged that Mother had previously lost permanent custody of six of her other children, with Child's father losing permanent custody of three children, on July 14, 2023, by order of the Lucas County Court of Common Pleas, Juvenile Division.

{¶ 4} LCCS also alleged that in Mother's prior case, Child's father was alleged to have "touched and fondled" two of Child's siblings. The abuse allegations were reported to Mother who "did not believe" Child's siblings and "did not support or protect" them.

---

[1] Child's father's parental rights over Child were also terminated by the trial court's judgment. Child's father did not appeal the trial court's decision and is not a party to this appeal. We reference Child's father only as necessary for our resolution of this appeal.

[2] We note that throughout these proceedings, the parties describe Mother as being compliant or noncompliant with the prior case plan services in support of their arguments. However, none of the parties address how Mother could have complied or not complied with case services from these prior cases when LCCS's request for termination of parental rights has already been granted. Therefore, we limit our review of Mother's attempt to comply with previous case plan services through the lens of R.C. 2151.353(A)(4) and R.C. 2151.414(E)(11) as described below.

2.

Mother was previously convicted of "hindering in filing or the prosecution of" charges against Child's father for the abuse. Mother and Child's father had also previously been held in contempt for violating no contact orders regarding Child's siblings and were held in local confinement for that contempt.

{¶ 5} LCCS's complaint also alleged that Mother had previously been diagnosed with several mental health issues. She was terminated unsuccessfully from mental health services she was ordered to undergo as part of the prior case plan services. Following her unsuccessful termination from mental health services, Mother tested positive for alcohol consumption, amphetamines, and THC. She was then unsuccessfully terminated from her previously ordered parenting program in the prior case. Child's father also was terminated unsuccessfully from all prior services he was ordered to undergo in the prior case. LCCS also alleged that it could not identify any appropriate relatives with whom to place Child in the present case and that Mother was not a safe and secure placement for Child. In its prayer for relief, LCCS sought an order to immediately place Child in shelter care and an order granting permanent custody to the agency, thereby terminating Mother's parental rights.

{¶ 6} On December 13, 2023, the trial court held a hearing on LCCS's request for shelter care orders. Following the hearing, the trial court found reasonable grounds that Child was in immediate danger, that removal from the home was needed to prevent immediate or threatened physical or emotional harm, and that LCCS was to take temporary custody of Child and place her into shelter care pending resolution the LCCS's

3.

complaint. On December 19, 2023, the trial court named Alanna Pauly as the guardian ad litem assigned to represent Child's interests in this matter.

{¶ 7} LCCS's request to have child adjudicated as dependent proceeded to a hearing on February 29, 2024. At that hearing, the trial court found that Mother had a "history" with LCCS that included the termination of her parental rights as to 6 of Child's siblings. The trial court also found that two of Child's siblings had been the subject of Child's father's sexual abuse prior to the termination of Mother's parental rights. The trial court also determined that Mother failed to complete the case plan services from those prior cases that were intended to address her mental health issues and her ability to protect Child's siblings from further abuse from Child's father. The court noted that Mother had completed substance abuse treatment in the prior cases but subsequently tested positive for illegal substances and failed to complete her reengagement in treatment. Based on these facts, the trial court held that Child was a dependent child as defined by R.C. 2451.04(C). The trial court set the trial for disposition of LCCS's complaint for permanent custody for March 27, 2024.

{¶ 8} The matter was ultimately tried over the course of two days—March 27, 2024 and April 22, 2024. At that trial, the parties elicited the following testimony:[3]

---

[3] Our summary of the testimony is presented for clarity and does not represent the order in which the testimony was elicited at trial. We omit testimony not relevant to our analysis.

4.

## Testimony of Rachel Eades, LCCS Caseworker

{¶ 9} Rachel Eades testified that she was the LCCS caseworker assigned to Child's case since January, 2024. As part of her preparation for the assignment, she reviewed the records exchanged in discovery, LCCS's notes on Child's case, and the records from Mother's previous cases with LCCS. She also spoke with Mother on the phone during her investigation and had visited Child during that time.

{¶ 10} As to the prior cases, Eades noted that Mother had not completed all of her case plan services related to any of her children. Eades confirmed that Mother completed the substance abuse services offered in the prior cases but was terminated unsuccessfully from her mental health services, her domestic violence survivor services, and her non-offending parent services. She testified that LCCS did not offer case plan services in the present case based on the recent termination of Mother's parental rights over Child's siblings and her failure to complete the case plan services in those cases.

{¶ 11} Eades also testified that Mother had missed several scheduled visits with Child at the beginning of the case following the shelter care hearing. She acknowledged on cross-examination that Mother had not missed a visit in the months prior to the trial. Due to the short time between the trial court ordering Child to be placed in shelter care and the trial, and despite her recent compliance with her visitation schedule, Mother had missed more than fifty percent of her scheduled visits with Child. From LCCS's records, Eades determined that Mother was likewise inconsistent in her visits with Child's siblings in her previous cases. Eades had heard that Mother struggled with finding transportation to her visits with her children but did not offer Mother any assistance with transportation

or amended scheduling of the visits. Eades did not contact Mother to discuss the missed visits. Eades conceded that she had never observed Mother with Child during the visits that had occurred and could not offer an opinion as to whether Mother and Child had bonded during those visits.

{¶ 12} Based on her observations and review of the records, Eades believed that it was in Child's best interest to have Mother's parental rights terminated. She stated that the same concerns LCCS raised that resulted in Mother's parental rights over Child's siblings being terminated in the prior case—that is, Mother's mental health, substance abuse, and allowing Child's father to remain in her home despite his past sexual abuse of Child's siblings—had not been resolved and were still present in the underlying case.

### Testimony of Mother

{¶ 13} Mother began her testimony stating that she had been involved in proceedings with LCCS for several years. This involvement included the provision of case services in her prior termination cases. Mother testified that she had completed substance abuse counseling and that she was currently engaged in mental health and domestic violence services. She attributed her past inability to complete her plan services to issues related to transportation. She testified that she no longer has transportation issues and that she can now remain engaged in the case plan services from her prior cases. Mother confirmed that she was aware that Eades was her LCCS caseworker and that they had spoken on two previous occasions. Both times they spoke the discussion was limited to confirming Mother's visitation with Child. Mother testified that she

6.

wished to keep custody of Child and hoped to have more time to establish case plan services and prevent termination of her rights.

{¶ 14} On cross-examination, Mother testified that while she had completed substance abuse treatment, that she subsequently tested positive for illegal substances. She also noted that she did not complete the domestic violence services because she was incarcerated. That incarceration resulted from her violation of a no contact order with her daughter. That order arose from her intimidation of her daughter as a witness in a case against Child's father. Mother also acknowledged that she was still married to Child's father. She denied having ever had domestic violence issues with Child's father. She also testified that she voluntarily quit her non-offending parent case services in the prior cases because she believed they were not helping.

### Testimony of Alanna Pauly, Guardian ad Litem

{¶ 15} Ms. Pauly confirmed that she was the guardian ad litem assigned to represent Child's interests in this case. She did not serve as the guardian ad litem in Mother's previous termination cases. She testified that she had observed Child while living in shelter care with his siblings and their foster parents. She stated that there was a "good" bond among the children and between Child and his foster parents. She confirmed that Child's needs are being met and that he appears very comfortable. During Pauly's observations, Child was working on developing fine motor skills after he had been referred to physical therapy. Pauly also described her observation of Child's visits with Mother as a "good interaction" during which Child was happy and smiling.

7.

{¶ 16} Pauly had originally filed her guardian ad litem report prior to the adjudication hearing on February 29, 2024. She filed a second report prior to the dispositional hearing because she had learned more information regarding Mother's "self-engag[ed]" case services. Pauly noted that Mother previously indicated that she was engaged in mental health services at two different agencies, even providing the name of her case manager at one of the providers. Pauly, upon contacting those agencies, learned that Mother had no appointments scheduled and that the named case manager did not exist.

{¶ 17} Pauly concluded that it was in Child's best interest for Mother's parental rights to be terminated. She believed that Child was safe and would succeed in LCCS's custody and that Mother had not been truthful regarding her efforts to make placement of Child with her safe. This conclusion was reflected in her report and based on her independent investigation.

### Closing arguments and judgment

{¶ 18} At the close of testimony, the parties presented their closing arguments. On May 10, 2024, the trial court entered judgment in LCCS's favor on its complaint for termination of parental rights over Child.

### B. Assignments of Error

{¶ 19} Mother timely appealed and asserts the following error for our review:

1. Lucas County Children's Services never worked towards reunification.

2. The finding of permanent custody was against the manifest weight of the evidence.

8.

## II. Law and Analysis

### A. LCCS was not obligated to offer case plan services toward reunification of Mother and Child.

{¶ 20} In her first assignment of error, Mother argues that the trial court erred by granting judgment in LCCS's favor on its complaint for permanent custody before offering her case plan service and giving her an opportunity to comply with those services prior to termination. Specifically, she argues that she "had a case plan which stated reunification [with Child] was the goal" but that LCCS did not provide her with sufficient time to complete the case plan prior to the trial court granting LCCS's motion. Having reviewed the record, we find Mother's argument fails as a matter of law.

{¶ 21} LCCS's initiated this matter with its filing of a *complaint* requesting permanent custody of Child. Notably, LCCS did not seek permanent custody of Child through a *motion* after having already been granted temporary custody. This distinction—the filing of a complaint rather than a motion—guides our analysis.

{¶ 22} An agency's right to seek permanent custody of a child through a motion arises under R.C. 2151.414. *In re. Ky.D.,* 2024-Ohio-3198 (8th Dist.). The procedure for resolving a motion for permanent custody is described in R.C. 2151.419. *Id.* at ¶ 33. Incumbent in that process, is an agency's obligation to make "reasonable efforts" to reunify a child with their parent at some point in the proceedings before a trial court may grant a motion for permanent custody. *In re. C.F.,* 2007-Ohio-1104, ¶ 43. The agency's reasonable efforts include case planning services that, if followed, would remedy the problems that initially caused the child to be removed from the home. *Id.* at ¶ 48.

9.

Therefore, when an agency seeks permanent custody through a motion in an already pending custody action, it is obligated to offer reasonable case plan services aimed at reunification of the parent and child. Under this analysis, Mother's argument that LCCS had to provide her with case plan services to assist with reunification would be supported. However, LCCS did not file a motion for permanent custody. Instead, it filed a complaint seeking permanent custody of Child, requiring analysis under a separate statutory section.

{¶ 23} An agency's complaint seeking permanent custody of a minor at the outset of the case, as LCCS filed here, is governed by the procedure outlined in R.C. 2151.353(A)(4). *In re. Ky.D.* at ¶ 30. In that scenario, the trial court must make two findings in order to grant permanent custody to an agency. First, "the trial court must find 'in accordance with division (E) of section 2151.414 that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.'" *Id.* (quoting R.C. 2151.313(A)(4)). Second, the trial court must determine "in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." *Id.* Mother's first assignment of error challenges the trial court's first finding pursuant to R.C. 2151.414(E).

{¶ 24} The trial court determined that Child could not be placed with Mother pursuant to R.C. 2151.414(E)(2), (4), and (11). Mother does not directly challenge any of these individual findings. Therefore, we begin our analysis with the trial court's R.C. 2151.414(E)(11) finding as it is most closely correlated to Mother's argument that she

10.

was entitled to case plan services.  R.C. 2151.414(E)(11) states:

> In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * *
>
> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Ohio Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, *and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.*

(Emphasis added).

{¶ 25} It is undisputed that Mother previously had her parental rights terminated as to six of Child's siblings.  Contrary to Mother's argument on appeal, there is nothing in R.C. 2151.414(E)(11) that obligated LCCS to offer Mother case plan services aimed at reunification. *See In re. Ky.D.* at ¶ 51-52. Therefore, her argument that the trial court erred in granting judgment in favor of LCCS before they offered her case plan services is without merit.

{¶ 26} However, the mere fact that Mother had her parental rights to Child's siblings terminated in a prior case is not dispositive of our review of the trial court's findings.  Instead, since the termination of Mother's parental rights to Child's siblings was undisputed, R.C. 2151.414(E)(11) shifts the burden to Mother to show that despite that termination, she could now provide Child with a legally secure permanent placement

11.

and adequate care for Child's health, welfare, and safety. *In re. Ky.D.* at ¶ 32. Having reviewed the record, we find that the trial court correctly determined that Mother failed to satisfy that burden.

{¶ 27} At trial, Mother testified that she had reengaged with the mental health and substance abuse case plan services that she failed to complete in her prior termination cases regarding Child's siblings. While the record shows that she did complete the substance abuse counseling in the prior cases, she had also subsequently tested positive for banned substances. Additionally, Pauly, Child's guardian ad litem, testified that during her investigation, she discovered that while Mother claimed to have enrolled in mental health services with two different providers, she had no appointments scheduled with either provider and that the case manager she named as one of those providers did not exist. She also noted that Mother and Child's father remained married and that Child's father had multiple positive tests for alcohol, marijuana, and cocaine in the months preceding trial. Pauly expressly stated that she had concerns about Mother's "honesty" since Mother's claims regarding providing a secure placement for Child did not comport with her investigation. Eades, LCCS's caseworker also testified that she had concerns over Mother's continued relationship with Child's father and Child's placement with Mother due to a prior indication of Child's father's sexual abuse of two of his siblings. Both Pauly and Eades recommended that Child not be placed with Mother based on their concerns. Mother's only testimony regarding any domestic or sexual abuse allegations against Child's father was a blanket denial that any such incidents had occurred.

12.

{¶ 28} Once the prior termination of Mother's parental rights over Child's siblings had been established, R.C. 2151.414(E)(11) required Mother to show, through clear and convincing evidence, that she could nevertheless provide a secure placement for Child. Having reviewed the record, we find that Mother failed to satisfy that burden. The testimony at trial revealed that Mother and Child's father remained married despite allegations of abuse and Child's father's continued drug use. Further, Mother's claimed engagement in mental health services that could allow her to alleviate concerns over Child's placement with her were revealed to be false. For these reasons, that trial court did not err in finding that R.C. 2151.414(E)(11) applied.

{¶ 29} Moreover, while we began our analysis with the trial court's finding under R.C. 2151.414(E)(11) as it most closely correlated to Mother's argument on appeal, we note that the first finding necessary to resolve an agency's complaint for permanent custody can be satisfied by *any* finding under R.C. 2151.414(E). *In re. D.C.,* 2008-Ohio-5292, ¶ 26 (6th Dist.) ("[a] proper finding of any one of the R.C. 2151.414(E) factors is sufficient to sustain a conclusion that the children cannot now, or in a reasonable time, be reunited"); *See also In re. C.F.* at ¶ 49-50. In its judgment, the trial court also found that Child could not be placed with Mother within a reasonable time based on the factors identified in R.C. 2151.414(E)(2) and (4). A plain reading of these sections, respectively, reveals that they are not based on whether a parent complied with the case plan services but instead on (1) whether a parent suffers from severe chronic mental health issues that renders them unable to provide an adequate permanent home for the child (R.C. 2151.414(E)(2)) and (2) that a parent has demonstrated a lack of

13.

commitment to regularly support, visit, or communicate with the child (R.C. 2151.414(E)(4)).  On appeal, Mother does not challenge either of these findings.  As a result, even if Mother had successfully challenged the trial court's R.C. 2151.414(E)(11) finding, the trial court's finding under these other two subsections would support its conclusion that Child could not have been placed with her within a reasonable time.  As a result, Mother has not shown that the trial court erred in making the first finding necessary for a termination of parental rights pursuant to R.C. 2151.353(A)(4).

{¶ 30} In sum, we find no support for Mother's argument that LCCS was obligated to provide case plan services to her under R.C. 2151.353(A)(4) before the judgment was granted.  Further, we find that each of the trial court's initial findings under R.C. 2151.414(E) are supported by the record and Mother failed to satisfy her burden to show that she could provide Child with a secure placement pursuant to R.C. 2151.414(E)(11).  For these reasons, we find Mother's first assignment of error not well-taken.

**B.    The trial court's judgment was not against the manifest weight of the evidence.**

{¶ 31} In her second assignment of error, Mother alleges that the trial court's granting of judgment to LCCS's on its complaint for permanent custody was against the manifest weight of the evidence.  Specifically, she argues that the trial court's conclusion that it was in Child's best interest to have her parental rights terminated was erroneous because she had completed some case plan services and that because Child is so young he

would not suffer if the best interest decision were delayed to permit her time to become a proper placement for him.

{¶ 32} Under a manifest weight standard of review, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). But, while we review the evidence and consider the witnesses' credibility, we must be mindful that the juvenile court, as the trier of fact, is in the best position to weigh evidence and evaluate testimony. *In re P.W.*, 2012-Ohio-3556, ¶ 20 (6th Dist). Its discretion in determining whether an order of permanent custody is in the best interest of a child "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." (Internal quotation marks and citations omitted.) *In re C.P.*, 2009-Ohio-2760, ¶ 10 (10th Dist.).

To determine the best interest of a child, R.C. 2151.414(D)(1), provides:

In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

15.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Mother argues that under these standards, the trial court's best interest finding was against the manifest weight of the evidence. We disagree.

{¶ 33} Initially, we reject Mother's argument that her compliance with case services offered by LCCS constitutes evidence that it was in Child's best interest to allow placement with her. As described above, there were no case services for Mother to comply with in regard to Child. Her alleged compliance with self-imposed case plan services is irrelevant to our review of her second assignment of error.

{¶ 34} Next, we find that Mother identified nothing in the record to show that the trial court's judgment was against the manifest weight of the evidence. The trial court expressly stated its consideration of the enumerated best interest factors in its judgment entry. It found, as described in R.C. 2151.414(D)(1)(a) and based on Eades's testimony as the assigned LCCS caseworker and Pauly's testimony as guardian ad litem, that Child had been placed in an appropriate foster home that is meeting all of his needs and that his foster parents are willing to adopt him. The trial court also found that Child was in the legally safe, secure, and permanent environment he was entitled to as described in R.C. 2151.414(D)(1)(d). Lastly, it found, pursuant to R.C. 2151.414(D)(1)(e), that Mother's parental rights to Child's siblings had previously been involuntarily terminated. That finding is emphasized by the trial court's previous finding that not only had Mother

16.

involuntarily lost parental rights to Child's siblings, Mother had not shown that she was a suitable placement for Child under its initial R.C. 2151.414(E)(11) finding. For these reasons, the trial court concluded that it was in Child's best interest to grant judgment in LCCS's favor on its complaint for permanent custody and to terminate Mother's parental rights. Our review of the record confirms that Eades's and Pauly's testimony directly supports the trial court's conclusion and we see no basis to question the trial court's trial court's determination of the witness's credibility. *See In re C.P.* at ¶ 10.

{¶ 35} On appeal, Mother does not directly challenge the trial court's best interest finding. Instead, she merely argues that because Child is young that he would not "suffer" from a temporary placement in foster care with the potential for reunification without termination of her parental rights, and that Child's placement with foster parents and his siblings equated to placing him with strangers. Mother does not identify any portion of the record containing evidence to support these assertions. Further, she does not identify any portion of the record that negates the trial court's conclusions. Put simply, Mother disagrees with the trial court's decision but has not identified any basis on which the trial court's judgment was against the manifest weight of the evidence presented at trial. Therefore, we find Mother's second assignment of error not well-taken.

### III. Conclusion

{¶ 36} For the foregoing reasons, we find that the trial court did not err in granting judgment in favor of LCCS on its complaint for permanent custody. The trial court found, pursuant to R.C. 2151.353(A)(4) that Child could not be placed with Mother in

accordance with R.C. 2151.414(E)(2), (4), and (11), and that it was in Child's best interest to terminate Mother's parental rights. Mother's argument that she was entitled to case plan services before her rights were terminated fail as a matter of law and the trial court's best interest judgment is not against the manifest weight of the evidence. Therefore, we find Mother's first and second assignments of error not well-taken.

**{¶ 37}** Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                 _____
                                                       JUDGE

Gene A. Zmuda, J.                

Charles E. Sulek, P.J.             _____
CONCUR.                                                 JUDGE

                                                _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.