[Cite as *In re D.M.*, 2026-Ohio-105.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re D.M., T.M., J.M.

Court of Appeals No. {22}E-25-013
{22}E-25-014
{22}E-25-015

Trial Court No. 2022 JN 0047
2022 JA 0010
2022 JN 0046

**DECISION AND JUDGMENT**

Decided: January 14, 2026

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Elizabeth F. Wilber, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} This matter is before the court on the consolidated appeal from the judgment of the Erie County Court of Common Pleas, Juvenile Division, finding D.M. (d.o.b.8/10/2020), T.M. (d.o.b. 11/10/2021), and J.M. (d.o.b.11/21/2015) were neglected and dependent children, T.M. was also an abused child, and granting permanent custody of the children to the Erie County Department of Job & Family Services (ECDJFS). Because we find no error with the juvenile court's judgment, we affirm.

## II. Facts and Procedural Background

{¶ 2} On October 6, 2022, ECDJFS opened a case after T.M. was taken to the hospital with numerous issues, which resulted in T.M. being taken by LifeFlight to Rainbow Babies Children's Hospital. T.M. was 11 months old at the time of hospitalization and weighed 8 pounds. Doctors diagnosed T.M. with a skull fracture, a fracture to his left humerus, subdural hematomas, a healing green stick fracture, and multiple healing rib fractures. T.M.'s older siblings, D.M. and J.M., also appeared underweight and were briefly hospitalized. D.M., who was 26 months old, weighed only 14 pounds. J.M. was 7 years old and underweight, and required only a few days of hospital care to stabilize his condition.

{¶ 3} After T.M. was hospitalized, Father admitted to police that he caused T.M.'s injuries, indicating he dropped T.M. Police arrested Father that day and charged him with felonious assault and endangering children.[1] D.M. and J.M. were left in Mother's care with a safety plan, but the safety plan was terminated the next day as unsuccessful, and D.M. and J.M. were placed with ECDJFS pursuant to an order for emergency temporary custody.

{¶ 4} All three children had been determined to have delays and/or special needs. All three were also identified by medical providers as underweight, and none of the children were eating solid foods. Mother and Father believed the children were just

---

[1] Father entered a guilty plea in his criminal case and was sentenced to an aggregate prison term of 5 to 7-and-a-half years, with an anticipated release date in May 2028. Father is not a party in the present appeal.

2.

small-statured and had no concerns for nutrition. The family received food assistance, but it was determined that the assistance was diverted to other family members and friends. The children required hospitalization to stabilize their conditions. J.M. could not eat without aspirating, and intervention was necessary to address his difficulties in eating. The children also did not receive the recommended care for their developmental or special needs, and J.M.'s attendance at school was sporadic.

{¶ 5} Following a shelter care hearing, D.M. and J.M. were placed in foster care. T.M. remained in the hospital and was placed in a separate foster home after discharge a month later. All three children remained in ECDJFS custody from October 7, 2022 until the trial on June 7, 2024. The ECDJFS filed initial case plans in the three cases.

{¶ 6} On October 11, 2022, ECDJFS filed a complaint alleging T.M. was an abused, neglected, and dependent child, a complaint alleging D.M. was a neglected and dependent child, and a complaint alleging J.M. was a neglected and dependent child. The ECDJFS had previously worked with the family, without filing a complaint, to address reports that the children were not receiving necessary medical care for their respective conditions. ECDJFS filed the complaints after the hospitalization of T.M. for serious injuries and malnutrition, with subsequent investigation revealing J.M. and D.M. were also suffering from malnutrition and not receiving necessary care.

{¶ 7} On December 5, 2022, Mother and Father appeared for the adjudication hearing, represented by counsel, and both admitted that T.M., D.M., and J.M. were

3.

dependent children, without stipulating to the facts in the complaints.[2] Mother and Father indicated agreement with the case plan filed by ECDJFS. The juvenile court approved the case plan and continued the temporary custody of the children with ECDJFS. A guardian ad litem was appointed for all three children.

{¶ 8} On December 14, 2022, Mother was indicted on two counts of child endangering, felonies of the second degree. She was released on bond pending the trial in the criminal case.

{¶ 9} While free on bond, Mother and Father relocated to Lima, Ohio, to live with family. Mother sought services in Lima that were consistent with the case plan, but self-referred to providers for a mental health and drug and alcohol assessment. Mother also self-referred and completed a parenting class. Because Mother self-referred, the providers were given no case information and lacked information on specific issues in completing evaluations. Furthermore, Mother was not consistent in attending monthly counseling sessions. Due to the criminal charges and a no-contact order, Mother was prevented from seeing the children for the pendency of the criminal proceeding. Mother communicated with her case worker at least once a month and requested updated photographs of the children during the pendency of the case, but Mother never inquired into the health or well-being of the children.

---

[2] Father was released on bond pending the criminal trial at the time of the adjudication hearing.

4.

{¶ 10} In April, 2023, Mother's bond was revoked after she failed to appear for a pretrial hearing in the criminal case, and Mother remained in custody until she entered a guilty plea to the two counts of child endangering. Once in custody, Mother no longer had access to providers to continue with her case plan. Mother received a minimum prison sentence of 3 years, with the potential for release in 2026.

{¶ 11} On July 25, 2023, ECDJFS filed a motion for permanent custody of the three children, alleging that permanent custody was in the best interest of the children and the children could not and/or should not be placed with either parent within a reasonable time, and Mother and Father had demonstrated a lack of commitment by failing to support, visit, or communicate with the children and demonstrated an unwillingness to provide an adequate, permanent home for the children. The juvenile court approved the amended case plan, filed by ECDJFS, on September 5, 2023.

{¶ 12} The juvenile court held a hearing on the motion for permanent custody on June 7, 2024. Mother attended the hearing by video and was represented by counsel at the hearing. As of June 7, 2024, the children had been in ECDJFS custody for 20 months. At the hearing, ECDJFS presented testimony of their investigators, case workers, and the guardian ad litem.

{¶ 13} First, the ECDJFS intake investigator, Amanda Turner, testified that T.M.'s hospitalization initiated the present case. Doctors determined no organic cause for T.M.'s malnourished state and had concluded T.M. was neglected, in addition to his serious injuries, including permanent brain injury. After meeting with Mother and Father in the home, conditions were noted as dirty and cluttered, with little food in the home. ECDJFS

5.

took custody of the children. Neither parent attended the shelter care hearing despite notice and Father's ability to request transport from the jail for hearing.

{¶ 14} Turner testified that T.M. weighed only 8 pounds at 11 months old. He appeared malnourished with no teeth, shrunken eyes, visible ribs through sagging skin, and a protruding stomach. T.M. spent a month in the hospital to stabilize his condition and increase his weight, with no medical reason contributing to his low weight. D.M. also appeared malnourished, and at 2 years old weighed about 14 pounds. D.M. stayed in the hospital for 6 days to stabilize his condition, with no medical reason for his underweight condition. J.M. was 7 years old, appeared underweight, and spent a few days in the hospital to stabilize his condition and address his inability to eat without aspirating his food. When Turner questioned Mother about why the children were so malnourished, Mother believed the children were just small like their parents and the children did not like to eat a lot of foods. Mother also indicated a lack of means to purchase food, contradicted by the family's receipt of assistance for food that was not used for the benefit of the children.

{¶ 15} Next, case worker Rebecca Frisch testified regarding the case plan services and the children's progress while in foster care. Frisch testified that she helped place the three children in foster homes after release from the hospital, and D.M. and J.M. were placed together in a home. T.M. required the most time in the hospital, and at 11 months old, he was very tiny, could not roll over or crawl, and required leg braces to correct his stance as he gained weight and strength. T.M. needed physical, occupational and feeding therapies, and eventually received speech therapy. T.M. also had congenital issues

6.

including a missing first chromosome, but doctors determined the missing chromosome was unrelated to his malnutrition and developmental delays.[3] At the time of the hearing, T.M. was walking, running, and eating solid foods.

{¶ 16} Frisch testified that D.M. was very small for his age and was mostly immobile and nonverbal at first, and he also required leg braces to correct his stance. Frisch stated that, when she first met D.M., he wasn't using his legs at all and would curl his legs under when picked up. D.M. received behavioral therapy and was fitted with a helmet for safety because he "was banging his head." D.M. also received physical, occupational, and speech therapies and received early intervention services. D.M. now used "some small words and some sign language." D.M. now walks and eats a variety of foods. D.M., like T.M., is missing his first chromosome and was also diagnosed with Aegis syndrome, but doctors indicated these conditions were unrelated to his malnutrition and developmental delays.

{¶ 17} Frisch testified that J.M., aged 7, was also very small and drank only PediaSure from a sippy cup and ate soft foods, like applesauce and pudding. He is now eating solid foods, and there was no reason for J.M. to be on a soft diet. J.M. was diagnosed with autism and remains nonverbal, although he is learning to communicate without speech, using gestures. J.M. receives physical and occupational therapies and is

---

[3] Frisch testified that the missing chromosome was linked to issues with eyesight, "they would need glasses," and issues with kidneys, "[they would need to] check on their kidneys every once in a while."

7.

on a waitlist for behavioral therapy. Frisch testified that J.M. is now attending school regularly and is doing well.

{¶ 18} Both D.M. and J.M. are bonded to their foster family. The foster family is not planning to adopt but is willing to keep the boys until they have a permanent placement through adoption. Also, although the two foster families ensure contact between D.M. and J.M. and their brother, D.M. and J.M. are not bonded to T.M. because they were separated while T.M. was very young. Frisch testified that T.M. is doing well in his placement, and T.M.'s foster parents are willing to adopt him. Both foster families ensure the boys receive their recommended therapies and medical treatments, and all three boys are happy and safe in their placements.

{¶ 19} As to Mother's case plan, Frisch testified that the pending criminal case prevented Mother from having contact with the children. Mother's case plan included mental health and drug/alcohol assessments and a parenting education course. Frisch indicated that Mother never provided an explanation for the children's medical state or T.M.'s injuries, leading to the addition of a psychological assessment to the case plan. Mother did not go through ECDJFS referrals for her providers, but self-referred, completing a mental health and drug/alcohol assessment and a parenting class prior to being taken into custody. However, ECDJFS did not have an address or contact information for Mother during the time she was living in Lima, and communication with the providers was delayed, preventing ECDJFS from timely sharing pertinent information, including the safety concerns for the children.

8.

{¶ 20} Frisch testified that she was able to send a letter to the mental health providers about a month-and-a-half into services, but while Mother started the recommended medication, she was not compliant in attending counseling as recommended, at least monthly. Instead, Mother went to the doctor for her medication but either cancelled or "no-showed" her counseling sessions. Mother never completed the psychological assessment, and after her bond was revoked, she remained in custody and could no longer complete her case plan. Frisch testified that Mother entered a guilty plea in the criminal matter to two counts of child endangering and the charges concerned at least two of her children. Mother received a prison term, and her anticipated release date was June 28, 2026, almost three years after the motion for permanent custody was filed and two years after the hearing on that motion.

{¶ 21} Additionally, Frisch testified that Mother had other barriers to reunification, including the fact she remained with Father and lacked any understanding as to the cause of the children's condition. Frisch testified that Father was not completing his case plan services and had pending criminal charges for injuring T.M. Frisch testified that, "if one parent in the household isn't working their case plan, it brings the other parent down." Even so, Frisch testified that Mother had not completed enough of her case plan to recommend reunification, Mother did not address the safety concerns for the children, and Mother never asked about the children's well-being for the pendency of the case, asking for only updated photographs in her once-a-month check-ins. With no other family member willing or appropriate for placement, Frisch testified that permanent

9.

custody for all three children was necessary to permit ECDJFS to provide a legally secure placement for the children.

{¶ 22} Finally, the guardian ad litem, James Melle, testified. Melle was assigned to the case on May 3, 2023, after the previous guardian ad litem passed away. He testified regarding separate placements for the boys, indicating he had no concern with D.M. and J.M. being placed in a separate home from T.M., considering the young ages and lack of bonding with T.M. He further testified that, consistent with the testimony and evidence already presented and his report, he recommended permanent custody be granted to ECDJFS, with permanent custody in the best interest of the children.

{¶ 23} On September 4, 2024, the magistrate issued his decision, granting the motion for permanent custody, and mother filed objections to the magistrate's decision.[4] Mother objected to the magistrate's finding that the children had been in custody of the agency for 12 of the past 22 months where the motion for permanent custody was filed less than 12 months after the complaint. Mother also objected to the magistrate's finding that the children could not be placed with their mother within a reasonable time, based on the manifest weight of the evidence, and argued that ECDJFS filed the motion for

---

[4] As an exhibit to her brief on objections in the trial court, mother included a written statement outlining the programs she is utilizing while incarcerated. She also argued she has documentation to demonstrate her compliance with her case plan. The juvenile court deemed this written statement as a pro se pleading by one who is represented by counsel, containing no legal or factual argument, and denied any request for remedy contained within that statement as "lacking merit and propriety." Mother does not assert error regarding the juvenile court's rejection of her pro se pleading, and therefore, her pro se pleading is not before us on appeal.

10.

permanent custody prematurely. The juvenile court addressed the objections, sustained the objection based on the filing of the motion prior to the children spending 12 months in agency custody, and granted the motion under a separate statutory section. The juvenile court overruled Mother's objections based on the evidence.

{¶ 24} On March 18, 2025, the juvenile court granted the motion for permanent custody, finding the parents failed to remedy conditions that led to the children's removal under R.C. 2141.414(E), the children could not be placed with either parent within a reasonable time and should not be placed with either parent pursuant to R.C. 2151.414(B)(1)(a), and permanent custody was in the children's best interest pursuant to R.C. 2151.414(D). The juvenile court found that Mother and Father failed to complete their case plans, both violated the conditions of their bond in the criminal proceedings and were each sentenced to prison terms that exceeded a reasonable time. The juvenile court determined R.C. 2151.414(E)(1), (5)-(8), (12), and (15) applied and that permanent custody was in the children's best interest. The juvenile court's findings in support were as follows:

> Both parents are currently incarcerated for an offense committed against the child (or a sibling). R.C. 2151.414(E)(5).
> Both parents were convicted of violations of R.C. 2919.22 against the child (or sibling) and based on their lack of completing case plan, present an on-going danger to the children. R.C. 2151.414(E)(6).
> Father was convicted of felonious assault in violation of R.C. 2903.11 and the child or his sibling is a victim of the offense. (R.C. 2151.414(E)(7)(b)).
> Based on the injuries to [T.M.] and the apparent lack of any treatment attempts by parents, the Court finds that the parents repeatedly withheld medical treatment from the child. Based on the malnourished condition of all the children and despite food stamps and other resources

11.

being available to the parents, the Court finds that both parents repeatedly withheld food from all of the children. R.C. 2151.414(E)(8).

Both parents were incarcerated at the time of the motion for permanent custody and will not be available to care for the child for at least 18 months after the filing of the motion. R.C. 2151.414(E)(12).

Father was convicted of committing abuse against [T.M.] and both were convicted of child endangering of the child or their sibling which constitutes neglect, the seriousness of the children's conditions, despite no valid excuse or intervention, support the conclusion that placement with either parent would constitute a threat to the safety of the child. R.C. 2151.414(E)(15).

The Court makes the findings above concerning R.C. 2151.414(E), and finds they are made by clear and convincing evidence. A finding on only one factor would justify a finding that the child cannot or should not be placed with either parent. The Court's findings on multiple factors certainly supports the conclusion that the child cannot, in a reasonable time, be placed with and should not be placed with either parent.

…

The Court now considers the best interests of the children. There was no evidence of any other family members, relatives or others, available, appropriate or willing to seek custody of the children according to the testimony presented. The GAL recommended that granting JFS custody would be in the child's best interests as the children are all too young to express their own wishes. All three children are in need of a legally secure placement that cannot be achieved without granting the JFS Motion. A legally secure placement that cannot be achieved through the parents based on their crimes against their children. The Court finds that clear and convincing evidence was presented to establish that granting the Motion is in the child's best interests. Mother's Objection that the determination of the child's best interests was against the manifest weight of the evidence is not well-taken and denied.

{¶ 25} In its decision, the juvenile court ordered Mother and Father's parental rights terminated and granted permanent custody of the children to ECDJFS.

{¶ 26} Mother filed a timely appeal of the judgment.

12.

### III. Assignment of Error

**{¶ 27}** On appeal, Mother asserts the following assignment of error:

> The court erred as a matter of fact and law and abused its discretion when it found that terminating the parental rights of the Mother and not continuing with the reunifying process with Appellant to be in the child's best interest, such was not supported by clear and convincing evidence and/or because permanent custody was not in the child's best interest.

### IV. Analysis

**{¶ 28}** Mother's sole assignment of error challenges the juvenile court's permanent custody determination, arguing she was demonstrating efforts to complete her case plan and should have been granted more time to complete her case plan so that reunification might be possible. Mother argues that, based on the evidence presented, the juvenile court abused its discretion and the decision was not supported by clear and convincing evidence. In essence, Mother challenges the "reasonable time" determination as against the manifest weight of the evidence without disputing the facts that resulted in her criminal conviction and prison term.

**{¶ 29}** "R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.,* 2020-Ohio-5102, ¶ 18, citing *In re C.F.,* 2007-Ohio-1104, ¶ 22. As pertinent in this case, the juvenile court was required to find, by clear and convincing evidence, that the children could not be placed with either parent within a reasonable time or should not be placed with the parents, R.C. 2151.414(B)(1)(a), and that permanent custody to ECDJFS was in the best interests of the children. In assessing whether the children could be or should be placed with the parents within a reasonable time under R.C. 2151.414(B)(1)(a), the juvenile

13.

court was required to consider the factors under R.C. 2151.414(E). *In re I.D.,* 2014-Ohio-238, ¶ 26 (6th Dist.), citing *In re B.K.,* 2010-Ohio-3329, ¶ 43.

{¶ 30} Mother challenges the juvenile court's statutory findings only as to the reasonable time determination under R.C. 2151.414(B)(1)(a). She challenges the best interest of the child determination based on her "basic civil right to raise her children."

{¶ 31} An award of permanent custody under R.C. 2151.353(A)(4) must be supported by clear and convincing evidence. *In re I.H.,* 2020-Ohio-4853, ¶ 33 (6th Dist.), citing *In re B.K.,* 2017-Ohio-7773, ¶ 16 (6th Dist.) (additional citation omitted). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 471 (1954), paragraph three of the syllabus.

{¶ 32} The appellate standard of review for permanent custody determinations is sufficiency of the evidence or manifest weight of the evidence, depending on the nature of the arguments presented by the parties. *In re Z.C.,* 2023-Ohio-4703, ¶ 18. In this case, Mother's challenge appears to challenge the weight, and not the sufficiency of the evidence. Accordingly, we will not reverse the judgment on permanent custody as against the manifest weight of the evidence where the record contains some competent, credible evidence by which the court could have formed a firm belief as to the essential statutory factors for termination of parental rights. *In re Denzel M.,* 2004-Ohio-3982, ¶ 8 (6th Dist.).

14.

**{¶ 33}** R.C. 2151.414(E) addresses the determination of whether a child cannot or should not be placed with a parent within a reasonable time, considering all relevant evidence. *See* R.C. 2151.414(E). "If the court determines, by clear and convincing evidence, at a hearing held pursuant to … division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *Id.* The juvenile court determined the following sections under R.C. 2151.414(E) applied:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

> (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

> (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code, and the child or a sibling of the child was a victim of the offense, or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

15.

(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(e) An offense under section 2905.32, 2907.21, or 2907.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(f) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a), (d), or (e) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or disability of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

…

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

…

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

{¶ 34} In challenging the "reasonable time" determination, Mother does not dispute the facts that make R.C. 2151.414(E)(5)-(8), (12), and (15) applicable to her case. Mother only disputes the facts relevant to her case plan efforts under R.C. 2151.414(E)(1), arguing she made efforts to remedy the conditions that led to the children's removal, and that ECDJFS should have given her more time to complete her case plan, after she was released from custody. The record in this case does not support Mother's argument.

{¶ 35} While Mother challenges the juvenile court's determination under R.C. 2151.414(E)(1), the juvenile court's finding as to any one of the factors under R.C. 2151.414(E) is sufficient to support the conclusion that the children cannot or should not be placed with Mother within a reasonable time. *In re T.H.,* 2025-Ohio-344, ¶ 41 (6th Dist.), citing *In re S.J.,* 2024-Ohio-5137, ¶ 29 (6th Dist.) (additional citation omitted.). Here, the juvenile court specifically determined that Mother withheld food and treatment from the children and she committed a criminal offense against her children, resulting in her conviction. Furthermore, as to the challenged requirement under R.C. 2151.414(E)

17.

and "reasonable time" under R.C. 2151.414(E)(12), the juvenile court specifically found that Mother did not complete her case plan and failed to remedy the conditions causing the children to be removed from the home, noting that Mother violated her bond in the criminal case by her "own behavior" and remained in custody until sentencing, with a prison term extending beyond a "reasonable time," or "at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing." R.C. 2151.414(E)(12). Considering the record, ECDJFS presented clear and convincing evidence that demonstrated Mother could not or should not be reunited with the children within a reasonable time.

{¶ 36} Mother further argues that the juvenile court should have given more weight to her parental rights and public policy favoring the preservation of families in determining permanent custody. The right to parent is a fundamental and basic civil right. *In re K.H.,* 2008-Ohio-4825, ¶ 39, citing *Troxel v. Granville,* 530 U.S. 57, 65 (2000); *In re D.A.,* 2007-Ohio-1105, ¶ 8 (additional citations omitted.). "[I]t is equally well-settled that '[t]he fundamental interest of parents is not absolute[.]'" *In re K.H.* at ¶ 40, quoting *In re D.A.* at ¶ 11.

{¶ 37} While the termination of parental rights is a "last resort," such termination is "expressly sanctioned" when the interest and welfare of the child necessitate termination. *In re K.H.* at ¶ 41, citing *In re Cunningham,* 59 Ohio St.2d 100, 105 (1979). "Ultimately, parental interests are subordinate to the child's interest when determining the appropriate resolution of a petition to terminate parental rights." *In re B.C.*, 2014-Ohio-

18.

4558, ¶ 20, citing *In re Cunningham* at 106. In her appeal, Mother asserts no specific challenge to the juvenile court's best interest determination.

{¶ 38} In determining the best interest of the child, R.C. 2151.414(D)(1) requires consideration of the enumerated factors and "does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e)." *In re A.M.,* 2020-Ohio-5102, ¶ 31. The statute requires a finding as to the following:

[T]he court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 39} In this case, the juvenile court found there were no family members or others who were "available, appropriate or willing to seek custody of the children" and

19.

the children were too young to express their own wishes. The juvenile court found that "[a]ll three children are in need of a legally secure placement that cannot be achieved without granting the JFS Motion." Additionally, the juvenile court found that the parents could not provide a legally secure placement "based on their crimes against the children." The record, additionally, demonstrated that the children were doing well in their foster care placements and the factors in R.C. 2151.414(E)(7) and (8) applied.

{¶ 40} In support of her public policy argument, Mother identifies no erroneous recitations of fact by the juvenile court, including the fact that her prison sentence extends more than eighteen months beyond the filing of the motion for permanent custody and the hearing on that motion. Our review of the best interest findings, moreover, is based on the manifest weight of the evidence, requiring deference to the juvenile court's determination of witness credibility and the weight given by the court to evidence and testimony. (Citations omitted) *In re T.J.*, 2021-Ohio-4085, ¶ 40 (6th Dist.),

{¶ 41} Here, the juvenile court considered the evidence and testimony and provided its findings, based on that consideration. "Its discretion in determining whether an order of permanent custody is in the best interest of a child 'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re T.J.* at ¶ 40, quoting *In re C.P.,* 2009-Ohio-2760, ¶ 10 (10th Dist.).

{¶ 42} Upon careful review of the juvenile court's findings, the statutory factors, and the record in this case, we find no error regarding the juvenile court's determination in this case. Therefore, having determined the juvenile court's findings are supported by

20.

clear and convincing evidence as to the required considerations under R.C. 2151.414, we find Mother's sole assignment of error not well-taken.

## V. Conclusion

{¶ 43} Finding substantial justice has been done, we affirm the judgment of the Erie County Court of Common Pleas, Juvenile Division. Appellant, Mother, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.        

_____
JUDGE

Gene A. Zmuda, J.       

Myron C. Duhart, J.      
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.